**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 19 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DARRELL RAY BUCHANAN, also
known as Leroy Clark,

       Petitioner-Appellant,

v.

A. LAMARQUE; DREW
EDMONDSON, sued as Drew
Edmundson Attorney General of
Oklahoma,

       Respondents-Appellees.

No.  03-5151
(D.C. No. CV-99-792-K(J))
(N.D. Okla.)

**ORDER AND JUDGMENT**  *

Before **SEYMOUR** , **KELLY** , and **McCONNELL** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal.   *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner-appellant Darrell Ray Buchanan, a state prisoner proceeding pro se, appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We affirm and deny all outstanding applications for a Certificate of Appealability (COA).

## I. Introduction

In July 1996, Buchanan was convicted in an Oklahoma state court of robbery with a firearm, assault and battery with a deadly weapon, and kidnaping, and he was sentenced to serve consecutive prison terms of one hundred and fifty years, twenty years, and ten years. In December 1997, the state trial court held a retrospective competency hearing and found that Buchanan had been competent to stand trial in July 1996. Buchanan's convictions were subsequently affirmed by the Oklahoma Court of Criminal Appeals (OCCA) in August 1998. Buchanan did not file a petition for a writ of certiorari in the United States Supreme Court. Thus, for purposes of 28 U.S.C. § 2244(d)(1)(A), Buchanan's convictions became "final" in November 1998. *See Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001).

Buchanan did not seek post-conviction relief in the Oklahoma courts. Instead, pursuant to 28 U.S.C. § 2254, Buchanan filed a petition for a writ of

-2-

habeas corpus in federal district court in August 1999. In August 2003, the district court entered an order denying habeas relief.

Pursuant to 28 U.S.C. § 2253(c), we previously granted Buchanan a COA on "both his procedural and substantive competency claims." Order filed April 8, 2004 at 1. For the reasons set forth herein, we deny habeas relief with respect to Buchanan's competency claims. Buchanan has also applied for a COA on several other issues, and we deny all outstanding COA applications.

We also conclude that Buchanan filed a second or successive habeas petition in the district court. Specifically, on July 12, 2002, Buchanan filed a motion in the district court for leave to file a third amended habeas petition. *See* Fed. Ct. R., Doc. 43. Because Buchanan asserted new claims in his proposed third amended petition that do not relate back under Fed. R. Civ. P. 15(c)(2) to the filing of his initial habeas petition, the district court should have treated those claims as a second or successive petition and transferred the petition to this court for consideration under 28 U.S.C. § 2244(b)(3). Accordingly, we hereby grant Buchanan leave, subject to the conditions set forth herein, to file a motion in this court for an order authorizing the district court to consider a second or successive habeas petition.

## II. Background

### 1. State Court Convictions and Competency Proceedings

In December 1984, Buchanan was arrested in Tulsa County, Oklahoma and charged with committing the offenses of robbery with a firearm, assault and battery with a deadly weapon, and kidnaping. On January 9, 1985, the state trial court entered an order directing that Buchanan be committed to a state hospital for a mental examination. *See* State Ct. R., Vol. I at 11. Buchanan was subsequently examined by a psychologist at the state hospital, and the psychologist determined that he was not competent to stand trial. *See* Competency Trial Exs. at 22. On January 11, 1985, the trial court therefore entered an order staying the criminal proceedings against Buchanan "until such time as [he] may be declared to be presently competent," State Ct. R., Vol. I at 14, and Buchanan was "committed to [the custody of the state hospital] for care and treatment of [his] mental condition," *id.*

In a letter to the trial court dated March 15, 1985, Dr. Norfleet, the senior staff psychiatrist at the state hospital, informed the trial court that Buchanan had attained competency. *Id.* at 20. Buchanan was then returned to the custody of the trial court, and a preliminary hearing was held on April 18, 1985. On April 25, 1985, Buchanan was released from custody pursuant to an appearance bond. Subsequently, Buchanan jumped bail, and he failed to appear at his arraignment.

Buchanan thereafter became a fugitive from justice, and nothing relevant transpired in his Oklahoma criminal case between 1985 and 1996.

In June and December 1995, Buchanan was convicted on charges of second degree robbery and first degree murder in separate trials in a California state court, and he was sentenced to serve consecutive prison terms of five years and twenty-five years to life. *See* Competency Trial Exs. at 13-14. After he was convicted of the California charges, Buchanan was returned to Tulsa County, Oklahoma to be tried on the charges stemming from his arrest in 1984.

In July 1996, Buchanan was convicted of all the Oklahoma charges in a jury trial before the Honorable B.R. Beasley. Buchanan was represented at the trial by Beverly Atteberry, a public defender employed by the Tulsa County public defender's office. Importantly, Judge Beasley did not make a judicial determination that Buchanan was competent to stand trial prior to the trial in July 1996, and Ms. Atteberry did not raise the issue of competency at any time, either before or during the trial. Instead, the issue was first raised by Buchanan in a discussion with Judge Beasley outside of the presence of the jury. At that time, Judge Beasley concluded (erroneously) that a post-examination competency hearing had been held in March 1985. *See* Trial Tr., Vol. III at 295-97.

## 2. First Direct Appeal and Remand

Buchanan subsequently filed a direct appeal in the OCCA, and he was represented on direct appeal by Barry Derryberry. Mr. Derryberry was a public defender, and, like Ms. Atteberry, he was employed by the Tulsa County public defender's office. Thus, he and Ms. Atteberry worked together in the same office and were colleagues. *See* Tr. of Competency Trial at 14-15.

On direct appeal, Mr. Derryberry raised the following claims: (1) the trial court did not have jurisdiction because the 1985 judicial determination of incompetency had not been judicially overruled; (2) it would be a violation of federal law to hold a retrospective competency hearing; (3) the jury instructions were erroneous; (4) prosecutorial misconduct; and (5) double jeopardy.

In September 1997, the OCCA entered an "order of remand," and it directed the trial court to determine whether a competency hearing had in fact been held in March 1985. If a competency hearing had not been held, the OCCA directed the trial court to conduct a retrospective competency hearing if it was feasible to conduct such a hearing. On remand to the trial court, Mr. Derryberry continued to represent Buchanan, and he acted as his trial counsel in the remand proceedings.

On remand, Judge Beasley determined that a competency hearing had not been held in March 1985. *See* Subsequent State Ct. R. at 47. Judge Beasley also

recused himself from the competency proceedings because the prosecution had indicated that he may be called as a witness. *Id.* at 48. The Honorable Jesse S. Harris was therefore substituted in Judge Beasley's place, and Judge Harris subsequently found that it would be feasible to conduct a retrospective competency hearing. *See* Tr. of Feasibility Hearing at 14-15. Although Buchanan had a right under Oklahoma law to have the competency issue decided by a jury, Mr. Derryberry informed Judge Harris at the feasability hearing that Buchanan (who was not present at the feasibility hearing) had waived his right to a jury trial. *Id.* at 15; *see also* Subsequent State Ct. R. at 52. As a result, a bench trial on the competency issue was subsequently held before Judge Harris on December 15, 1997. Although Buchanan was represented by Mr. Derryberry at the bench trial, Buchanan was not present at the trial.

At the competency trial, Judge Harris made the following ruling regarding the issue of which party would have the burden of proof:

> From my review of the records and documents in this case, the last judicial determination as to the competency of Mr. Buchanan was that he was incompetent. And likened to a situation whereby a person is determined incompetent and there's a post-evaluation and they were sent for evaluation and treatment . . ., and at the post-evaluation competency hearing, unless and until the Court is convinced otherwise, they remain incompetent. All right. So I'll note [Mr. Derryberry's] request that the Defendant be presumed incompetent and will grant that request. Nevertheless, I still rule that the defense has the burden of proof.

Competency Trial Tr. at 8-9. Immediately after Judge Harris made this ruling, Mr. Derryberry requested that the court take notice of the record, and he rested on behalf of Buchanan. *Id.* at 9. The state then demurred to the sufficiency of Buchanan's evidence. *Id.* Judge Harris overruled the demurrer, explaining his decision as follows:

> I overruled your demurrer because I found minutes ago that the defendant is incompetent, certainly based on the [judicial] determination . . . [in 1985]. And since there has been no determination to the contrary or any evidence that's been presented for the Court's consideration up to this very second to cause the court to decide otherwise, the Court finds a prima facie case has been presented by the Defendant as to . . . the incompetency issue.

*Id.* at 10.

The state then called Ms. Atteberry as the only witness in its case. During direct and cross-examination, Ms. Atteberry testified that she believed that Buchanan had been competent to stand trial, although she also acknowledged that her relationship with Buchanan had been strained and he had been difficult to represent. *Id.* at 11-39. The state also introduced the following evidence to support its claim that Buchanan had been competent to stand trial in July 1996: (1) abstracts of the judgments showing the July and December 1995 California convictions, which Judge Harris treated as evidence that Buchanan had been competent to stand trial in 1995, *id.* at 51-52; (2) the March 15, 1985 letter from Dr. Norfleet stating that Buchanan had attained competency, *see* Competency

Trial Exs. at 15; and (3) other records from the state hospital pertaining to the mental evaluations that were performed on Buchanan in 1985, *id.* at 16-17, 19-20, 22. As is apparent from the transcript of the competency trial, Judge Harris had also reviewed portions of the transcripts of the July 1996 trial and the subsequent sentencing hearing. *See* Competency Trial Tr. at 50-51, 53-54.

At the end of the competency trial, Judge Harris found that Buchanan had been competent to stand trial in July 1996. *Id.* at 50-54; Subsequent State Ct. R. at 52. Mr. Derryberry then filed a second direct appeal in the OCCA.

### 3. Second Direct Appeal

In the second direct appeal, Mr. Derryberry asserted only one claim, and that was that Judge Harris had erred at the competency trial by placing the burden of proving incompetence on Buchanan. In August 1998, the OCCA entered a summary opinion rejecting the claims raised by Mr. Derryberry in both Buchanan's first and second direct appeals, and Buchanan's convictions and sentences were affirmed in all respects. Buchanan did not seek post-conviction relief in the Oklahoma courts.

### 4. Initial Habeas Petitions

Buchanan filed his first § 2254 petition in August 1999, within a year of when his Oklahoma convictions became final. Buchanan also subsequently filed an amended petition and a second amended petition. Buchanan asserted identical

substantive claims in his first three petitions, and we will refer collectively to the first three petitions as Buchanan's "initial petitions."

In his initial petitions, Buchanan asserted the following claims: (1) the state trial court did not have jurisdiction because the 1985 judicial determination of incompetency had not been judicially overruled; (2) the trial court erred by placing the burden of proving incompetence on Buchanan; (3) the jury instructions were erroneous; (4) prosecutorial misconduct; and (5) double jeopardy. *See* Fed. Ct. R., Doc. 13 at 8-14. In a reply brief that he filed in July 2002, Buchanan also claimed that there had been an inadequate record before the state trial court to conduct a meaningful retrospective competency hearing. *Id.*, Doc. 44 at 7, 12. In his reply brief, Buchanan also asserted a substantive due process challenge, claiming that he was actually incompetent at the time of his trial in July 1996. *Id.* at 5-6.

**5. Motion for Leave to File Third Amended Habeas Petition**

On July 12, 2002 -- almost three years after he had filed his first habeas petition and well after the one-year limitations period in 28 U.S.C. § 2244(d)(1)(A) had expired, Buchanan moved for leave to file a third amended habeas petition. *Id.*, Doc. 43. Buchanan also submitted a proposed third amended petition as an attachment to his motion for leave. In the proposed third amended petition, Buchanan claimed for the first time that: (1) his exclusion from the

competency trial violated his constitutional rights to due process and a fair trial;
(2) Mr. Derryberry had provided ineffective assistance as his remand trial counsel
by failing to make arrangements for him to be present at the competency trial;
(3) Mr. Derryberry had provided ineffective assistance as his remand trial counsel
due to a conflict of interest; and (4) Mr. Derryberry had provided ineffective
assistance as his remand appellate counsel because he failed to assert the right to
be present and the conflict of interest claims in the second direct appeal to the
OCCA. *Id.*, Doc. 43 (proposed third amended petition at 14-22).

With regard to the conflict of interest claim, Buchanan claims that Mr.
Derryberry had a conflict of interest because his colleague at the Tulsa County
public defender's office, Ms. Atteberry, testified as a witness for the State of
Oklahoma at the competency trial. As fleshed out in his opening brief, Buchanan
also alleges that Mr. Derryberry's allegiance to the Tulsa County public
defender's office gave him a motive for not wanting to establish that
Ms. Atteberry had performed deficiently in connection with the trial in July 1996.
*See* Aplt. Opening Br. at 10-14, 16-17. According to Buchanan, Mr. Derryberry
therefore failed to properly investigate the competency issue. *Id.* Buchanan has
further alleged that he did not discover this "potential for conflict" until July 23,
2001, less than a year before he filed his motion for leave to file the proposed

third amended petition. *See* Declaration of Darrell R. Buchanan at 1, ¶ 3 (attached to proposed third amended petition).

On April 9, 2003, the district court entered an order denying Buchanan's motion for leave to file the proposed third amended petition. *See* Fed. Ct. R., Doc. 46. The court concluded, based on a failure to exhaust state remedies/mixed petition analysis, *id.* at 2-4, that "the interests of justice would not be served by allowing Petitioner to amend his petition . . . almost three . . . years after the original petition was filed . . . to add . . . unexhausted claim[s]," *id.* at 4.

### 6. Order Denying Habeas Relief

On August 12, 2003, the district court entered a final order denying habeas relief on all of the claims that Buchanan had asserted in his initial petitions and reply brief. *Id.*, Doc. 49 at 7-18. First, the court concluded that the state trial court had been able to conduct a meaningful retrospective competency hearing and had not erred in allocating the burden of proof. *Id.* at 9-11. Second, after finding that "the evidence of [Buchanan's] guilt was overwhelming," the court concluded that Buchanan was not entitled to habeas relief on his prosecutorial misconduct claim. *Id.* at 13. Lastly, the court concluded that Buchanan's substantive due process claim failed on the merits because the state trial court's competency determination is presumed to be correct under § 2254(e)(1), and

Buchanan had failed to meet his burden of rebutting the presumption of correctness by clear and convincing evidence.    *Id.* at 16-18.

Buchanan is now appealing the district court's rulings regarding his procedural and substantive due process claims and his prosecutorial misconduct claim.[1]  Buchanan is also appealing the district court's order denying his motion for leave to file the proposed third amended petition.  As noted above, we previously granted Buchanan a COA with regard to both his procedural and substantive due process claims, and Buchanan's applications for a COA with regard to his prosecutorial misconduct and amendment claims are presently before this court.

### III.  Analysis

**1.  Procedural Due Process Claims**

In the summary opinion that it issued in Buchanan's second direct appeal, the OCCA concluded that the retrospective competency trial "did not violate

---

[1]    In its final order denying habeas relief, the district court also determined that Buchanan was not entitled to relief with regard to his jury instruction and double jeopardy claims.    *See* Fed. Ct. R., Doc. 49 at 11-12, 14-15.  Although Buchanan filed an application for a COA with regard to his jury instruction and double jeopardy claims, he has waived those claims by failing to raise them in his opening brief.   *See Tran v. Trs. of the State Colls. in Colo.*   , 355 F.3d 1263, 1266 (10th Cir. 2004).  In addition, while Buchanan alleged that the state trial court lacked jurisdiction in the statement of issues in his opening brief,      *see* Aplt. Opening Br. at 3, he does not refer to the jurisdictional claim in the body of his brief, and he has provided no authority or arguments to support the claim.  Thus, the jurisdictional claim has also been waived.    *See Tran* , 355 F.3d at 1266.

Buchanan's due process rights." Summary Op. at 2. Because "the trial court acted under the presumption that Buchanan was incompetent at the time of [the retrospective] hearing," *id.* at 2-3, the OCCA also rejected Buchanan's claim that the trial court "erred in placing the burden on him to prove his [incompetence]," *id.* at 2.

Buchanan filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), and his claims are thus governed by its provisions. *See Mitchell v. Gibson*, 262 F.3d 1036, 1045 (10th Cir. 2001). For purposes of AEDPA, we conclude that the OCCA adjudicated the merits of Buchanan's procedural due process claims. *See Aycox v. Lytle*, 196 F.3d 1174, 1177-78 (10th Cir. 1999) (holding that "we owe deference to the state court's *result*, even if its reasoning is not expressly stated," and that state court summary opinions are therefore owed the same deference under § 2254(d) as those that fully discuss the merits). Consequently, the district court was prohibited from granting habeas relief on the claims

> unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," *id.* § 2254(d)(2).

*Mitchell*, 262 F.3d at 1045. Applying these standards, we agree with the district court that Buchanan "is not entitled to habeas corpus relief on his claims related

-14-

to procedures used to determine his competence by the state courts." Fed. Ct. R., Doc. 49 at 11.

Under federal law, "[t]he law of competency is well-settled. The criminal trial of an incompetent defendant violates due process. This prohibition is fundamental to an adversary system of justice." *Allen v. Mullin,* 368 F.3d 1220, 1238 (10th Cir. 2004) (quotation omitted), *petition for cert. filed* (U.S. Nov. 18, 2004) (No. 04-7413).

> In determining whether a criminal defendant is competent to stand trial, the trial court must consider whether defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him.

*Gilbert v. Mullin*, 302 F.3d 1166, 1178 (10th Cir. 2002) (quotation omitted).

It is also well established that "[c]ompetency claims may be based on violations of both procedural and substantive due process." *Allen*, 368 F.3d at 1239.

> A procedural competency claim is based upon a trial court's alleged failure to hold a competency hearing, or an adequate competency hearing, while a substantive competency claim is founded on the allegation that an individual was tried and convicted while, in fact, incompetent. The standards of proof for procedural and substantive competency claims differ. To make out a procedural competency claim, a defendant must raise a bona fide doubt regarding his competency to stand trial[.] This requires a demonstration that a reasonable judge should have doubted the defendant's competency. It does not require proof of actual incompetency. A substantive competency claim, on the other hand, requires the higher standard of proof of incompetency by a preponderance of the evidence.

-15-

*Id.* (quotations and citations omitted).

To determine whether there was a "bona fide doubt" regarding a criminal defendant's competency, "we look to evidence of . . . irrational behavior, . . . demeanor at trial, and any prior medical opinion to determine whether further inquiry on the part of the trial judge was required." *Smith v. Mullin*, 379 F.3d 919, 930 (10th Cir. 2004) (quotation omitted). "Evidence of mental illness and any representations of defense counsel about the defendant's incompetence also may be considered." *Gilbert*, 302 F.3d at 1179 (quotation omitted).

This court has also recognized that, "[a]lthough retrospective competency hearings are disfavored, they are permissible whenever a court can conduct a meaningful hearing to evaluate retrospectively the competency of the defendant." *Clayton v. Gibson*, 199 F.3d 1162, 1169 (10th Cir. 1999) (quotation omitted).

> A meaningful determination is possible where the state of the record, together with such additional evidence as may be relevant and available, permits an accurate assessment of the defendant's condition at the time of the original state proceedings. A court should consider (1) the passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial, including the trial judge, counsel for both the government and defendant, and jail officials.

*Id.* (quotation and citations omitted).

Having carefully reviewed the state and federal court records in this case, we conclude that the district court correctly determined that Buchanan is not entitled to habeas relief under § 2254(d) with regard to his procedural due process claims. To begin with, while it is well established that a "prior [state] adjudication of incompetence . . . gives rise to a rebuttable presumption of continued incompetence," *Sena v. New Mexico State Prison*, 109 F.3d 652, 655 (10th Cir. 1997), we agree with the district court that, "by recognizing a presumption of incompetence, as requested by [Buchanan], the trial court in effect required the State to overcome the presumption and demonstrate that [Buchanan] had achieved competence at the time of his trial." Fed. Ct. R., Doc. 49 at 10-11.

Moreover, even if the state trial court utilized an unconstitutional burden of proof, we conclude that Buchanan has failed to raise a bona fide doubt regarding his competency at the time of his trial in July 1996. This is not a clear-cut issue, however, as the state court record reveals that Buchanan acted erratically at times, both before and during his trial, and that he had a very contentious relationship with Ms. Atteberry. There is also a complete lack of contemporaneous medical evidence in the state court record regarding Buchanan's mental state in 1996 and 1997. This omission is troubling since the prior medical records from 1985 indicate that Buchanan suffered from significant mental problems. *See* Competency Trial Exs. at 16-17, 19-20.

On the other hand, the lack of contemporaneous medical evidence is off-set, to some extent, by the abstracts of the judgments showing the July and December 1995 California convictions. In addition, because we have recognized that "defense counsel is often in the best position to determine whether a defendant's competency is questionable," *McGregor v. Gibson*, 248 F.3d 946, 960 (10th Cir. 2001) (en banc) (quotation omitted), we find it particularly significant that Ms. Atteberry took the side of the state on the competency issue, *see Walker v. Gibson*, 228 F.3d 1217, 1228 (10th Cir. 2000) (rejecting habeas petitioner's procedural competency claim, in part, because defense counsel "explicitly denied raising to the [trial] court that [petitioner] was not competent to stand trial" and "[a]t no time did counsel request a competency evaluation or hearing"), *abrogated on other grounds by Neil v. Gibson*, 278 F.3d 1044, 1057 n. 5 (10th Cir. 2001); *Clayton*, 199 F.3d at 1171 (finding no bona fide doubt as to habeas petitioner's competency at the time of trial where defense counsel declined to express "serious" concerns about his client); *Walker v. Att'y Gen.*, 167 F.3d 1339, 1346-47 (10th Cir. 1999) (rejecting habeas petitioner's procedural competency claim, in part, because trial counsel never raised the issue of petitioner's competency at trial). In sum, based on the record before this court, we cannot conclude that "the state trial court ignored evidence that, viewed objectively,

-18-

raised a bona fide doubt as to [Buchanan's] competency." *Clayton*, 199 F.3d at 1171 (quotation omitted).

Finally, Buchanan is not entitled to habeas relief under § 2254(d) with regard to his claim that the state court record was inadequate for purposes of conducting a retrospective competency hearing. Although the trial court could certainly have developed a more complete record regarding the competency issue, especially in terms of obtaining contemporaneous medical evidence, we believe the existing state court record allowed the trial court to "conduct a meaningful hearing to evaluate retrospectively the competency of [Buchanan]," *id.* at 1169, and that is all the Constitution requires.

**2. Substantive Due Process Claim**

Buchanan did not assert a substantive due process claim in the state-court proceedings. [2] As a result, the AEDPA deference standards in § 2254(d) do not apply to our review of that claim. Instead, "we review the district court's legal conclusions de novo and factual findings for clear error." *Allen*, 368 F.3d at 1234. However, under § 2254(e)(1), "[a] state court factual finding is presumed

_____

[2] In its order denying habeas relief, the district court correctly pointed out that Buchanan had failed to exhaust the substantive due process claim in the Oklahoma courts. *See* Fed. Ct. R., Doc. 49 at 6, 15. Buchanan's failure to exhaust the remedies available under Oklahoma law did not prevent the district court from addressing the merits of the substantive due process claim, however, because the district court exercised its prerogative under 28 U.S.C. § 2254(b)(2) to deny the claim on the merits. *Id.*

correct. The applicant for a writ of habeas corpus has the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

"A petitioner may make a substantive due process competency claim by alleging he was, in fact, tried and convicted while mentally incompetent." *Walker*, 228 F.3d at 1229. As noted above, the standard for establishing a substantive due process violation is more demanding than the "bona fide doubt" standard that governs procedural competency claims, *see Walker*, 167 F.3d at 1347, and "to succeed in stating a substantive incompetency claim, a petitioner must present evidence that creates a real, substantial and legitimate doubt as to his competency to stand trial," *id.* (quotation omitted). For the reasons set forth above, we have concluded that the evidence in this case does not satisfy the bona fide doubt standard for a procedural competency claim. As a result, we also conclude that Buchanan "cannot meet the more stringent substantive due process competency standard." *Walker*, 228 F.3d at 1230.

We have also recognized that "[c]ompetency to stand trial is a factual question." *Bryson v. Ward*, 187 F.3d 1193, 1201 (10th Cir. 1999). Accordingly, because we have concluded that the state trial court did not utilize an unconstitutional burden of proof, "we afford the state court's finding of competency a presumption of correctness unless [Buchanan] rebuts the presumption by clear and convincing evidence." *Wallace v. Ward*, 191 F.3d

1235, 1243 (10th Cir. 1999). Based on the record before this court, we agree with the district court that Buchanan has failed to make the necessary showing to rebut the presumption of correctness. *See* Fed. Ct. R., Doc. 49 at 16-18.

### 3. Outstanding COA Applications

As noted above, Buchanan's application for a COA with regard to his prosecutorial misconduct claim is currently before this court. A COA can issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

"Prosecutorial misconduct does not warrant federal habeas relief unless the conduct complained of is so egregious as to render the entire proceedings against the defendant fundamentally unfair." *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999). In making this determination, "we consider the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial." *Id.* at 1276. (quotation omitted). Specifically, "we look first at the strength of the evidence against the defendant and decide whether the prosecutor's [conduct] plausibly could have tipped the scales in favor of the prosecution." *Id.* (quotation omitted).

As summarized by the district court, Buchanan claims that he was denied a fair trial due to the following prosecutorial misconduct:

> Petitioner claims that during closing argument, the prosecutor made comments . . . leading the jury to speculate that [petitioner] may have

-21-

shot, or even killed one or both victims [of the robbery], had it not been for the failure of the gun to fire. In addition, Petitioner complains that the prosecutor's comments during closing argument led the jury to give "short [shrift]" to the issue of guilt. Lastly, Petitioner complains that the prosecutor referred more than once to the evidence as "uncontroverted," thereby commenting improperly on his right to remain silent and to not testify at trial.

Fed. Ct. R., Doc. 49 at 12 (citations omitted).

Having carefully reviewed the transcript of the trial proceedings, we agree with the district court that, "even assuming that the specific instances of alleged misconduct identified [by Buchanan] were improper, the prosecutor's misconduct was not of sufficient magnitude to influence the jury's decision. In this case, the evidence of [Buchanan's] guilt was overwhelming." *Id.* at 13. Buchanan is therefore not entitled to a COA on his prosecutorial misconduct claim.

**4. Second or Successive Petition Issues**

As set forth above, on July 12, 2002 -- almost three years after he had filed his first habeas petition and well after the one-year limitations period in 28 U.S.C. § 2244(d)(1)(A) had expired -- Buchanan moved for leave to file a third amended habeas petition. *See* Fed. Ct. R., Doc. 43. Buchanan also submitted a proposed third amended petition as an attachment to his motion for leave, and, for the first time, Buchanan asserted his right to be present claim, his conflict of interest claim, and the related ineffective assistance of counsel claims. The district court

denied the motion for leave based on a failure to exhaust state remedies/mixed petition analysis. *Id.*, Doc. 46 at 2-4.

Because Buchanan's new claims were filed after the one-year limitations period in § 2244(d)(1)(A) had expired, we conclude that the district court should have determined, as a threshold matter, whether the claims related back under Fed. R. Civ. P. 15(c)(2) to the filing of Buchanan's first habeas petition in 1999. As we have previously recognized, the threshold relation back analysis is critical because, if a district court determines that new habeas claims do not relate back and are therefore time-barred, the court must then treat the new claims as a second or successive habeas petition and transfer the petition to this court for consideration under § 2244(b)(3). *Cf. United States v. Espinoza-Saenz*, 235 F.3d 501, 503-05 (10th Cir. 2000) (involving motion filed by federal prisoner to supplement habeas claims brought under 28 U.S.C. § 2255); *see also Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001) (holding that reasoning of *Espinoza-Saenz* applies to amended habeas petitions filed by state prisoners under § 2254).

Subject to certain restrictions, a habeas petitioner may amend a habeas petition under Rule 15. The claims asserted in an amended habeas petition do not automatically relate back to the date when the initial petition was filed, however. Instead, Rule 15(c)(2) provides that "[a]n amendment of a pleading relates back

-23-

to the date of the original pleading when . . . the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading." Rule 15(c)(2) has been the subject of much debate in the context of habeas proceedings brought pursuant to § 2254, but this circuit has taken a firm stance and held that

> an untimely amendment to a [§ 2254 petition] which, by way of additional facts, clarifies or amplifies a claim or theory in the original [petition] may, in the District Court's discretion, relate back to the date of the original [petition] *if and only if* the original [petition] was timely filed and *the proposed amendment does not seek to add a new claim or to insert a new theory into the case*.

*Woodward*, 263 F.3d at 1142 (10th Cir. 2001) (quoting *Espinoza-Saenz*, 235 F.3d at 505).

While Buchanan's right to be present and conflict of interest claims are related factually to his other competency claims, they are based on entirely separate theories of relief, and we therefore conclude that they are "new" claims for purposes of Rule 15(c)(2). *Id.* As a result, "the relation back provision of Rule 15(c) cannot be applied to save [Buchanan's right to be present and conflict of interest claims], and the district court did not abuse its discretion in denying . . . permission to amend." *Espinoza-Saenz*, 235 F.3d at 505.

The district court did not follow the right procedure in this case, however, as the court should have treated Buchanan's right to be present and conflict of interest claims as a second or successive habeas petition and transferred the

petition to this court for consideration under § 2244(b)(3). *Id.* at 503; *see also*

*Coleman v. United States*, 106 F.3d 339, 341 (10th Cir. 1997) (holding that "when

a second or successive petition for habeas corpus relief under § 2254 . . . is filed

in the district court without the required authorization by this court [under

§ 2244(b)(3)(A)], the district court should transfer the petition . . . to this court

. . . pursuant to [28 U.S.C.] § 1631"). Indeed, as we have recognized in the

analogous context of § 2254 cases involving motions under Fed. R. Civ. P. 60(b),

a district court does not have jurisdiction to address the merits of a second or

successive petition until this court has granted the required prior authorization

under § 2244(b)(3)(A). *See Lopez v. Douglas*, 141 F.3d 974, 975-76

(10th Cir. 1998) (per curiam).

Accordingly, "we will construe [Buchanan's] notice of appeal and appellate

brief as an implied application under 28 U.S.C. § 2244(b)(3)(A) for leave to file a

second habeas petition in the district court," *id.* at 976, and we must determine

whether Buchanan has made "a prima facie showing that satisfies AEDPA's

criteria for the filing of a second habeas petition," *id.* For purposes of this case,

Buchanan must therefore make a prima facie showing that: (1) "the factual

predicate[s] for [his right to be present and conflict of interest claims] could not

have been discovered previously through the exercise of due diligence;" and

(2) "the facts underlying the claim[s], if proven and viewed in light of the

evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [him competent to stand trial]." 28 U.S.C. § 2244(b)(2)(B)(i) and (ii).

Before we will authorize Buchanan to proceed in the district court with regard to his right to be present and conflict of interest claims, he must also make a prima facie showing that the claims are not barred by the one-year limitations period in § 2244(d)(1). Although this requirement is not expressly set forth in § 2244(b)(3), we see no reason to authorize the filing of a second or successive petition in the absence of such a prima facie showing. For purposes of this case, Buchanan must therefore show that he filed his motion for leave to file his third amended habeas petition within one year of "the date on which the factual predicate[s] of [the right to be present and conflict of interest claims] . . . could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

Based on the record before this court, it is undisputed that Buchanan knew that a retrospective competency trial had been conducted in his absence by at least August 1999 when he filed his first habeas petition. [3] Thus, Buchanan was aware

---

[3] Buchanan's awareness of the competency trial is confirmed by the fact that an attachment to the first habeas petition specifically states that the state trial court had held a competency trial on December 15, 1997. *See* Fed. Ct. R., Doc. 1 (attachment setting forth Buchanan's fifth claim for habeas relief).

of the factual predicate of the right to be present claim in August 1999.  As a result, the claim is barred by the one-year limitations period since: (1) Buchanan did not file his motion for leave to file his third amended petition until almost three years later; and (2) we see no basis for equitable tolling, *see Woodward*, 263 F.3d at 1142-43 ("AEDPA's statute of limitations is subject to equitable tolling only when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control.") (quotation omitted).

With regard to Buchanan's conflict of interest claim, we reach a different result.  As noted above, Buchanan has alleged that he did not discover the "potential for conflict" until July 23, 2001, less than a year before he filed his motion for leave to file the third amended petition.  *See* Fed. Ct. R., Doc. 43 (attached declaration at 1, ¶ 3).  Buchanan has also alleged that Mr. Derryberry "lured [him] into believing . . . that no such conflict [existed]."  *Id.* (proposed third amended petition at 20).  Moreover, while we believe that Buchanan knew from a very early date that both Ms. Atteberry and Mr. Derryberry were public defenders, we cannot determine, based on the record currently before this court, when Buchanan actually discovered that they worked in the same public defender's office.

-27-

That said, we note that Mr. Derryberry forwarded a copy of the entire "court file which was provided to [his] office for [Buchanan's] direct appeal" to Buchanan in November 1998. Fed. Ct. R., Doc. 14, Ex. A. Although the documents forwarded to Buchanan did not include trial transcripts, the information contained in the court file should have been sufficient to provide the factual predicate of Buchanan's conflict of interest claim if he had exercised due diligence to pursue the claim as required by § 2244(d)(1)(D). Based on the attachments to his first habeas petition, it is also undisputed that Buchanan knew by at least August 1999 that Ms. Atteberry had testified at the retrospective competency hearing as a witness for the state. *See* Fed. Ct. R., Doc. 1 (attached "Brief of Appellant After Remand" at 2-3). Finally, while it appears that Buchanan has been unable to obtain transcripts of the trial court proceedings despite repeated requests to the state courts and the district court, we do not believe the lack of transcripts provides a basis for equitable tolling with regard to Buchanan's conflict of interest claim.

Nonetheless, the record before this court is not sufficiently developed for us to definitively rule on the discovery and equitable tolling issues. In addition, while we are skeptical that Buchanan can satisfy the demanding requirements of § 2244(b)(2)(B)(ii) concerning the merits of his conflict of interest claim, Buchanan has at least raised a colorable claim that Mr. Derryberry had an "actual"

conflict of interest due to his working relationship with Ms. Atteberry. *See Workman v. Mullin*, 342 F.3d 1100, 1107 (10th Cir. 2003) (addressing requirements for conflict of interest claims brought under § 2254 in cases where the defendant raised no objection at trial), *cert. denied*, 124 S.Ct. 2397 (2004). Subject to the conditions set forth below, we therefore conclude that Buchanan should have the opportunity to file a formal motion in this court for an order authorizing the district court to consider the conflict of interest claim in a second or successive petition.

## CONCLUSION

For the reasons set forth herein, we AFFIRM the denial of habeas relief with regard to Buchanan's procedural and substantive competency claims. We also DENY all outstanding applications for a COA.

We GRANT Buchanan leave to file a motion in this court for an order authorizing the district court to consider a second or successive habeas petition. If Buchanan fails to file such a motion within thirty days of the entry of this order and judgment, "an order will be entered denying authorization to file the underlying petition . . . in the district court." *Coleman*, 106 F.3d at 341. However, if Buchanan chooses to file an authorization motion, the motion shall be limited to Buchanan's claim that he received ineffective assistance of trial and appellate counsel following the remand from the OCCA for a retrospective

competency hearing because his public defender had a conflict of interest. Further, the motion shall set forth the specific reasons why Buchanan believes that he has made a prima facie showing that satisfies the criteria under § 2244(b)(2)(B)(i) and (ii) for the filing of a second or successive petition. The motion shall also set forth the specific reasons why Buchanan believes that his conflict of interest claim is not barred by the one-year limitations period in § 2244(d)(1). Specifically, Buchanan shall set forth all of the relevant facts that support his allegation that he did not discover the conflict of interest claim until July 23, 2001. *See* Declaration of Darrell R. Buchanan at 1, ¶ 3 (attached to proposed third amended petition). [4] Buchanan shall further explain why he could not have discovered the claim earlier through the exercise of due diligence.

Because the claim is barred by the one-year limitations period in § 2244(d)(1), we DENY Buchanan authorization to file a second or successive petition to assert his right to be present claim and any related ineffective assistance of trial and appellate counsel claims.

Finally, we DENY Buchanan's motion/application to expand the issues to be certified for this appeal and stay briefing. We GRANT Buchanan's request to

---

[4] Although Buchanan claimed in his declaration that he discovered the potential for a conflict of interest in July 23, 2001, we note that Buchanan alleges in his opening brief that he did not discover the potential for a conflict of interest until August 23, 2001. *See* Aplt. Opening Br. at 27. Buchanan will need to address this discrepancy if he decides to file an authorization motion in this court.

add additional pages to his opening brief. We also GRANT Buchanan's request that this court take judicial notice of the "Order Appointing Psychiatrist" that was entered in Buchanan's criminal case in California in June 1994. We DENY Buchanan's request that this court take judicial notice of the discharge summary that was prepared by Dr. R.N. Garcia in March 1985 as moot because the discharge summary is already a part of the record before this court. *See* Competency Trial Exs. at 16-17.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge